IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DEDRA KETCHENS                                                                                          PLAINTIFF

VS.                                                                         CIVIL ACTION NO. 1:17-cv-275-FKB

NANCY A. BERRYHILL, ACTING COMMISSIONER                              DEFENDANT
OF SOCIAL SECURITY

_____

MEMORANDUM OPINION AND ORDER

This cause is before the Court regarding the appeal by Dedra Ketchens of the Commissioner of Social Security's final decision denying her application for a period of disability and Disability Insurance Benefits ("DIB"). In rendering this Memorandum Opinion and Order, the Court has carefully reviewed the Administrative Record [8] regarding Ketchens's claims (including the administrative decision, the medical records, and a transcript of the hearing before the Administrative Law Judge ("ALJ")), Plaintiff's Memorandum [13], and Defendant's Memorandum [15]. The parties have consented to proceed before the undersigned United States Magistrate Judge [9], and the District Judge has entered an Order of Reference [10]. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

I. PROCEDURAL HISTORY

Ketchens filed her application for a period of disability and DIB on September 15, 2016, and alleged a disability onset date of November 14, 2014, when she was nearly forty-five years of age. [8] at 179.[1] She was last insured on December 31, 2015. *Id.* at 97. In her application, she

---
[1] Citations reflect the original pagination of the administrative record.

alleged that she was disabled due to fibromyalgia, radiculopathy, neuropathy, major depressive disorder, irritable bowel syndrome, diverticulitis, neurological spinal disc disease, and bladder disorder. *Id.* at 135-136. At the time of her application, she was five feet, seven inches tall, and weighed one hundred sixty-eight pounds. *Id.* at 135.

Ketchens was born on December 15, 1969, and completed four years of college, graduating in 2006 with a degree in information technology. *Id.* at 107, 179. She served as a yeoman in the U.S. Navy from April 1, 1996, to October 31, 1999. *Id.* at 179, 209. After completing her service, she worked nearly twenty years as a civilian contractor/computer programmer for the Navy, until she suffered an unspecified injury in 2007. *Id.* at 107-109, 209. On November 1, 2007, she filed for DIB and was denied benefits. *Id.* at 109. Thereafter, in 2011, 2013, and 2014, Ketchens worked sporadically as a quality control manager/computer manager with a private construction company that performed projects for the Army Corps of Engineers. *Id.* at 109-111.

Ketchens is married. *Id.* at 103. In December 2015, she adopted her great-niece and two great-nephews, ages 3, 4, and 11, from the foster care system in Louisiana. *Id.* at 103-105, 564. The children's foster mother, Ketchens's husband, her two sisters, her two brothers, and a neighbor participate in the care of the children and assist in running the household. *Id.* at 104-105.

The Social Security Administration denied Ketchens's application initially and upon reconsideration. Ketchens requested a hearing, which was held on April 20, 2017, in Hattiesburg, Mississippi, at which she was represented by counsel, and a vocational expert testified. *Id.* at 93. On May 24, 2017, the ALJ issued a decision finding that Ketchens was not disabled. *Id.* at 11-

26. The Appeals Council denied her request for review on July 31, 2017, *id.* at 1, and this appeal followed.

## II. MEDICAL HISTORY, HEARING, AND DECISION

In his May 24, 2017, decision, the ALJ evaluated Ketchens's impairments using the familiar sequential evaluation process[2] and found that she has the severe impairments of lumbar and cervical degenerative disc disease, right shoulder degenerative joint disease; bilateral carpal tunnel syndrome; headaches, and depression. (20 C.F.R. §§ 404.1520(c)). *Id.* at 14. The ALJ determined that the medical evidence did not support a diagnosis of fibromyalgia. *Id.* At the next step, the ALJ determined that Ketchens does not have an impairment or combination of

---

[2] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 15.

The ALJ specifically found that Ketchens's mental impairment did not meet or medically equal the criteria of Listing 12.04. *Id.* The ALJ did not analyze the paragraph A criteria, but found that she failed to satisfy either paragraph B or C criteria. *Id.* He found that she had moderate limitations in the areas of understanding, remembering, or applying information; interacting with others; and the ability to concentrate, persist, or maintain pace. *Id.* Finally, he found that Ketchens has mild limitations in her ability to adapt or manage herself. *Id.* at 16.

As for paragraph C criteria, the ALJ acknowledged that Ketchens's mental impairments have persisted for more than two years and that she received treatment in the form of outpatient therapy and outpatient medication management. *Id.* The ALJ concluded, however, that the evidence failed to show that she had achieved only marginal adjustment, *i.e.*, "only a minimal ability to adapt to changes in her environment and daily life." *Id.* The ALJ pointed to several factors as bases for his decision: Ketchens's adoption and care for the children, her ability to drive them to and from daycare and school, and her ability to attend her own doctors' appointments and relay her medical history without problems. *Id.* He noted, furthermore, that no State agency psychological consultant concluded that her condition met or equaled a medical listing. *Id.*

The ALJ found that Ketchens has the residual functional capacity to perform light work as defined by 20 C.F.R. § 404.1567(b), with the following limitations: she could perform occasional climbing ramps/stairs, overhead reaching on the right, stooping, kneeling, crouching, and crawling. *Id.* at 16. She must avoid unprotected heights and dangerous machinery. *Id.* She

could perform simple, routine tasks and tolerate occasional contact with the public. *Id.*

In making the determination of Ketchens's RFC, the ALJ recounted her testimony regarding her major depressive disorder, her limited daily activities and the assistance she receives from others for care of the children, her 100% disability rating from the Veterans Administration ("VA"), her chronic pain and migraine headaches, her treatment for fibromyalgia from the VA, her limited ability to walk without aid of a walker, her ten-year history of epidural injections for back pain, her depression, her diverticulitis and internal bleeding, and her treatment for esophageal stricture. *Id.* at 17-20. The ALJ reviewed the medical records and noted her long history of treatment for lower back pain, and her treatment for bilateral carpal tunnel syndrome. *Id.* at 20-21. The ALJ observed that in March 2015 she underwent arthroscopic superior labral repair, right arthroscopic capsular shift, right shoulder drill chondroplasty, and right shoulder arthroscopic bursectomy, with "good" rehabilitation potential. *Id.* at 21.

After considering her testimony and the medical records, however, he concluded that her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms are not entirely consistent with the medical evidence and other evidence in the record. *Id.* at 20. The ALJ discounted the physical residual functional capacity questionnaire submitted by her long-time treating physician, Dr. Gilo Kawasaki, because the questionnaire was dated March 10, 2017, and did not indicate whether the opinions applied to Ketchens's condition prior to December 31, 2015, the date she was last insured. *Id.* at 23. The questionnaire described her prognosis as poor and concluded that she had great limitations in her ability to work due to her daily pain caused by her degenerative disc disease of her cervical and lumbar spine, as well as

her depression and decreased use of her hands, fingers, and arms. *Id.* at 904-907. The ALJ also found, without discussion or elaboration, that it was inconsistent with the evidence prior to that date. *Id.* at 23.

Likewise, the ALJ discounted the opinion of Ketchens's VA treating psychiatrist, Dr. Jayaprabha Nair, and gave it "little weight" because the opinion was dated February 15, 2017. *Id.* at 23, 775-776. The ALJ supported this conclusion by noting that Ketchens had only seen her for "several months." *Id.* at 23. He reached this determination despite record evidence of her several-year treatment for major depressive disorder with the VA. *Id.* at 913. Furthermore, Dr. Nair's short-term treatment of Ketchens was due to the retirement of her long-term treating VA psychiatrist after her last visit with him in December 2015. *Id.* at 914. The ALJ also acknowledged the VA's determination that Ketchens is 100% disabled, but concluded, without discussion, that the VA's decision is not binding on the Social Security Administration.

Considering this evidence, the ALJ concluded that Ketchens was unable to perform her past relevant work as a computer programmer and construction project manager. *Id.* at 24. At age 46 on December 31, 2015, the date she was last insured, the ALJ found that she was a "younger individual," with at least a high school education. *Id.* at 24. Consulting the Medical-Vocational Rules as a framework, the ALJ concluded that she is not disabled. *Id.* Considering her residual functional capacity, and consulting with a vocational expert, the ALJ concluded that Ketchens could perform the jobs of poultry worker, cleaner, and small parts assembler. *Id.* at 25. Each of these jobs was light in exertional demand with a specific vocational preparation of 2. *Id.* Thus, the ALJ concluded that Ketchens was not under a disability from November 14, 2014, her alleged onset date, through December 31, 2015, the date she was last insured. *Id.*

## III. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied, 42 U.S.C. § 405(g) (2006). *Accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

*Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

## IV. DISCUSSION OF THE ALLEGED ERRORS AND APPLICABLE LAW

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence, should be reversed, and should be remanded for a hearing based on the following reasons:

1. The Step 3 determination is not supported by substantial evidence;

2. The ALJ did not adequately consider Plaintiff's 100% VA disability rating; and

3. The Step 5 determination is not supported by substantial evidence.

[13] at 1.

### A. Is the Step 3 determination supported by substantial evidence?

Ketchens argues that the ALJ erred when he found that she did not meet the criteria for Listing 12.04 for depressive, bipolar and related disorders. 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.04 (2017). To meet Listing 12.04, a claimant must meet the criteria for both paragraphs A and B, or A and C. *Id.* The ALJ did not analyze whether Ketchens met the criteria for paragraph A, yet he determined that Ketchens failed to meet the criteria for either paragraph B or C. [8] at 15-16. Plaintiff argues that the ALJ failed to properly evaluate her according to the paragraph C criteria.

Listing 12.04, regarding depressive, bipolar and related disorders, provides as follows:

A. Medical documentation of the requirements of paragraph 1 or 2:
   1. Depressive disorder, characterized by five or more of the following:
      a. Depressed mood;
      b. Diminished interest in almost all activities;
      c. Appetite disturbance with change in weight;
      d. Sleep disturbance;
      e. Observable psychomotor agitation or retardation;
      f. Decreased energy;
      g. Feelings of guilt or worthlessness;
      h. Difficulty concentrating or thinking; or
      i. Thoughts of death or suicide.
   2. Bipolar disorder, characterized by three or more of the following:
      a. Pressured speech;
      b. Flight of ideas;
      c. Inflated self-esteem
      d. Decreased need for sleep;

      e. Distractibility;
      f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
      g. Increase in goal-directed activity or psychomotor agitation.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
  1. Understand, remember, or apply information (see 12.00E1).
  2. Interact with others (see 12.00E2).
  3. Concentrate, persist, or maintain pace (see 12.00E3).
  4. Adapt or manage oneself (see 12.00E4).

OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
  1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see12.00G2b); *and*
  2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, § 12.04 (2017).

As for paragraph C, the ALJ acknowledged that Ketchens's mental impairments have "persisted for more than two years." [8] at 16. The ALJ also found that Ketchens met subsection (1), because she has been "receiving treatment in the form of outpatient therapy and outpatient medication management." *Id.* However, by affording the opinion of her treating psychatrist little or no weight without a showing of good cause, and relying on the lack of an opinion from state agency psychological consultants, the ALJ erred as a matter of law in assessing Plaintiff under Section 12.04.

The Fifth Circuit has held that generally, a treating physician's opinion as to the nature and severity of a claimant's impairment is to be given controlling weight if it is well-supported by objective medical evidence and not inconsistent with other substantial evidence. *Martinez v.*

*Chater*, 64 F.3d 172, 175-176 (5th Cir. 1995). However, an ALJ may give less weight, or even no weight, to a treating physician's opinion where there is good cause shown. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

> The Fifth Circuit has stated:
>
> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the relevant regulations.]

*Newton*, 209 F.3d at 453 (emphasis in original). The criteria set forth in 20 C.F.R. § 416.927 provide that the ALJ consider the following: (1) length of the relationship between the claimant and the treating physician, and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) whether the treating physician's opinion is consistent with the record as a whole; (5) whether the treating physician is a specialist; and (6) other factors which tend to support or contradict the opinion. Even though an ALJ may make a "global statement that she considered opinion evidence in accordance with applicable regulations, courts should not accept or rely on such a statement. The courts instead look to the substance of ALJ decisions to determine what the ALJ considered and whether the ALJ applied the correct legal standards." *Bentley v. Colvin,* 2015 WL 5836029, at *9 (N.D. Tex. Sept. 30, 2015).

In this case, the only medical opinion in the record regarding Plaintiff's mental health is the opinion of Plaintiff's treating VA psychiatrist, Dr. Nair. [8] at 775. The ALJ gave Dr. Nair's opinion "little weight" because Ketchens was her patient for "only . . .several months," the opinion was given after the date last insured, and it was inconsistent with prior records. *Id.* at 23.

However, the short period of treatment by Dr. Nair was due to the fact that Dr. Nair took over Ketchens's psychiatric care when her long-time treating psychiatrist retired soon after December 2015. The ALJ failed to acknowledge that as a VA psychiatrist, Dr. Nair had access to Ketchens's VA treatment records spanning nearly two decades, and the record shows that Dr. Nair had reviewed Ketchens's treatment records prior to rendering her opinion. *See id.* at 568, 775. Further, although Dr. Nair gave her opinion after the date last insured, internal statements in her Medical Source Statement indicate that her opinions pertained to Ketchens's mental condition *before* the date last insured. For example, after noting that Ketchens had "marked" restrictions in numerous work-related mental activities, Dr. Nair stated that Ketchens "had significant functional difficulty at . . . work . . . resulting in her not being able to work [and that] supervisors [had] suggested [her] for early retirement." *Id.* at 775. And after noting that Ketchens had "marked" and "extreme" restrictions in numerous, additional work-related mental activities, Dr. Nair stated that Ketchens "ultimately could not continue at work due to her medical and psychiatric conditions." *Id.* Finally, the ALJ did not specify in what manner Dr. Nair's opinion was inconsistent with prior records. In sum, the ALJ's treatment of Dr. Nair's opinion is insufficient under *Newton* and fails to provide an adequate explanation.

The ALJ also erred by relying on the lack of an opinion by agency non-examining consultants. *Id.* at 16. Although he stated that he gave the state agency consultants' opinions "little weight," *id.* at 23, he appears to have relied on their opinions denying the claim when he "note[d] that no State agency psychological consultant concluded that a mental listing is medically equaled." *Id.* at 16. The ALJ made this comment even though both state agency consultants stated that there was insufficient evidence to evaluate Ketchens's claim, and neither

consultant rendered a specific opinion on Ketchens's restrictions for work-related mental activities. *See id.* at 135-147.

For the foregoing reasons, the ALJ erred as a matter of law by failing to comply with *Newton* when rejecting Dr. Nair's opinions. Further, the ALJ's finding that Ketchens does not meet the criteria of Listing 12.04 is not supported by substantial evidence. Accordingly, this case should be remanded for further evaluation of this listing.

### B. Is the Step 5 determination supported by substantial evidence?

Plaintiff argues that the ALJ's decision that she can perform certain jobs is based upon a flawed hypothetical question posed to the vocational expert, and therefore, the decision is not based on substantial evidence. More specifically, Ketchens argues that the vocational expert's testimony was premised on a defective hypothetical question that did not include the limitations of bilateral carpal tunnel syndrome, even though this condition was recognized as "severe" by the ALJ in his decision. Plaintiff is correct that the ALJ recognized her bilateral carpal tunnel syndrome as a severe impairment. *Id.* at 14. Plaintiff is also correct that the ALJ's hypothetical posed to the vocational expert did not include any reference to her bilateral carpal tunnel syndrome or limitations in handling and fingering. *See id*. at 130.

The Fifth Circuit has clearly stated when a defective hypothetical question will produce reversible error:

> Unless the hypothetical question posed to the vocational expert by the ALJ can be said to incorporate reasonably all disabilities of the claimant *recognized by the ALJ*, and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question), a determination of non-disability based on such a

defective question cannot stand.

*Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)(emphasis added). Although the *Bowling* court considered whether a claimant or his representative had been given an opportunity to correct an ALJ's error in the hypothetical, *Bowling* "did not state that a party's failure to point out the problems in a defective hypothetical automatically salvages that hypothetical as a proper basis for a determination of non-disability." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

In this case, the ALJ's hypothetical question posed to the vocational expert made no mention of any restrictions on handling and fingering resulting from her impairment of bilateral carpal tunnel syndrome. Plaintiff was diagnosed with and treated for this condition in September 2015, prior to the date she was last insured, [8] at 499, and the ALJ specifically found that Ketchens's bilateral carpal tunnel syndrome was a severe impairment. *Id.* at 14. Plaintiff's attorney posed additional questions to the vocational expert regarding some of Plaintiff's limitations on handling, fingering, and overhead reaching, which the Court surmises could be presented by Plaintiff's severe impairment of bilateral carpal tunnel syndrome. In response to those questions, the vocational expert stated that such a hypothetical person would not be able to perform the jobs he had identified. *Id.* at 132-133. Nevertheless, the ALJ made no attempt to change his hypothetical to incorporate the limitations imposed by bilateral carpal tunnel syndrome.

When the ALJ fails in his duty to develop the facts fully and fairly relating to a plaintiff's claim for disability benefits, his decision is not substantially justified. *Boyd*, 239 F.3d at 708. None of the ALJ's hypothetical questions incorporated handling and fingering limitations which could result from the severe impairment of bilateral carpal tunnel syndrome. And the ALJ does

not explain why he failed to account for this limitation in his hypothetical questions. The ALJ's failure to incorporate any limitations associated with bilateral carpal tunnel syndrome prevented the vocational expert from addressing whether jobs exist which can be performed with this limitation. Therefore, the ALJ's decision is not supported by substantial evidence. This case should be remanded to the Commissioner for further consultation with a vocational expert that includes consideration of Ketchens's restrictions from her severe impairment of carpal tunnel syndrome.[3]

## V. CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, the undersigned finds that this matter should be reversed and remanded for further administrative proceedings consistent with this ruling.

SO ORDERED, this the 20th day of March, 2019.

                                /s/ F. Keith Ball
                                UNITED STATES MAGISTRATE JUDGE

---

[3] Because the Court is remanding the case based on Plaintiff's Issues 1 and 3, it declines to address Plaintiff's Issue 2.